**O'BRIEN, BELLAND & BUSHINSKY, LLC**
1526 Berlin Road
Cherry Hill, NJ 08003
856-795-2181/Fax 856-795-2182
Mark E. Belland, Esquire
*Attorneys for Plaintiff, Susan Bowman*

| | |
|---|---|
| SUSAN BOWMAN<br><br>Plaintiff,<br><br>v.<br><br>ROWAN UNIVERSITY, JAMES NEWELL, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, GLOUCESTER COUNTY<br><br>DOCKET NO.<br><br>Civil Action<br><br><br>COMPLAINT |

Plaintiff, Susan Bowman, ("Ms. Bowman," "Bowman," or "Plaintiff"), residing at 215 W. 92nd Street, New York, NY 10025, by way of this Complaint against the Defendant, Rowan University, ("Rowan" or "Defendant"), hereby says:

## NATURE OF ACTION

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* (sex discrimination); (2) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* (retaliation); (3) a violation of Title IX of the Education Amendment of 1972 (20 U.S.C. 1681, *et seq.*); (4) a violation of 42 U.S.C. 1983; and (5) common law negligent infliction of emotional distress.

## JURISDICTION AND VENUE

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Plaintiff has satisfied the prerequisites necessary to bring these claims.

3. Venue is proper in Gloucester County because (a) the causes of action arose in Gloucester County, (b) the Defendant conducts and/or conducted business in Gloucester County.

## PARTIES

4. Rowan University is a public university of the state of New Jersey, located at 201 Mullica Hill Rd., Glassboro NJ 08028.

5. Rowan University's Department of Art is an education program or activity which receives Federal financial assistance.

6. Susan Bowman is a tenured full professor of fifteen and one-half years at Rowan University.

7. During the relevant time period, James Newell was the Provost of Rowan University and as a senior management level employee controlled Plaintiff's workplace and/or supervised Plaintiff, and/or was an employee who aided and/or abetted in the commission of conduct complained of in this Complaint who either acted within the scope of his employment at the workplace during working hours, or to the extent he went beyond the scope of his employment, Defendants ratified, embraced, and added to his conduct.

8. During the relevant time period, JOHN DOES 1-10 were currently unknown employees of Rowan University who were either senior management level employees' who controlled Plaintiff's workplace, and/or supervised Plaintiff, and/or were employees who aided and/or abetted in the commission of conduct complained of in this Complaint and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced, and added to their conduct. Plaintiff reserves the right to amend the Complaint to add these individuals by name as the parties engage in discovery.

9. During the relevant time period, XYZ Corp. 1-10 were unknown affiliated corporations, entities, or other organizations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

10. Therefore, all defendants are subject to suit under the statutes and causes of action alleged above.

11. At all times referred to in this Complaint, employees of Rowan University, who are referred to herein, were either acting within their scope of employment at the workplace during working hours, or, to the extent they were not, the University ratified, embraced, and added to their conduct.

## **FACTUAL ALLEGATIONS**

12. Susan Bowman was hired as an Assistant Professor by the College of Fine and Performing Arts, Department of Art at Rowan University in 2002. Since the fall of 2012, the Department of Art and Ms. Bowman's position have resided in the College of Communication and Creative Arts.

13. In the fall of 2007, Ms. Bowman was elected to the position of Chair of the Department of Art, defeating Interim Chair Dr. Fred Adelson ("Adelson") (male). She started serving as the Chair of the Department of Art in January of 2008.

14. Ms. Bowman would serve in this position for eight years and was successfully re-elected twice (for the 2012 and 2015 terms).

15. After each of these elections, Ms. Bowman had her appointments and re-appointments approved by the University President.

16. Since taking the position as Chair of the Department of Art in January of 2008, Ms. Bowman has been subject to repeated incidents of intimidation, harassment, and hostility from five faculty members who overtly opposed her election: Dr. Herbert Appleson ("Appleson"), Dr. Fred Adelson, Nancy Ohanian ("Ohanian"), Dr. Daniel Chard ("Chard"), and Skeffington Thomas ("Thomas").

17. Rowan University does not have a formal agreement or job description by which Chairs are to conduct their supervisory roles.

18. Nevertheless, as Chair of the Department of Art, Ms. Bowman successfully carried out her responsibilities.

19. In her capacity as Chair of the Department of Art, Ms. Bowman made numerous improvements to the Department of Art, including: (1) the implementation of a new degree program (Biomedical Art and Visualization BFA) through Rowan University's Academic Board of Trustees and the New Jersey President's Council; (2) improvements to the curriculum, including starting the first Specialization in Graphic Design (now termed Concentration); and (3) authoring, managing, and completing a major National Association of Schools of Art and Design 10-year re-accreditation process for Rowan University's Department of Art.

20. Ms. Bowman is one of three members that served on the Department of Art Tenure and Recontracting Committee ("ADTRC") during the 2015-2016 school year.

21. The other two members were Dr. Jane Graziano ("Graziano") (female), Art Education Coordinator, and Dr. Andrew Hottle ("Hottle") (male), who was designated as Chair of the ADTRC.

22. The roles and responsibilities of candidates and recontracting committees when evaluating candidates for recontracting and tenure are outlined in a Memorandum of Agreement ("MOA"), which was signed by and between Rowan University and the American Federation of Teachers, Local 2373 ("AFT") in September of 2015.

23. Dr. Tingting Wang ("Dr. Wang") was one of two tenure-track faculty members that were reviewed by the School Year 2015–2016 ADTRC.

24. Dr. Wang began working for Rowan University in the fall of 2012, as an Assistant Professor in the Department of Art.

25. Dr. Wang was invited for an internal review and advisement with the ADTRC, which occurred on or about September 23, 2015. During this meeting, the ADTRC noticed that Dr. Wang's recontracting packet demonstrated a failure to meet the field work expectation, which was one of the tasks required of an Assistant Professor of Art Education at Rowan University.

26. On or about September 29, 2015 the ADTRC met to discuss and formulate the recommendation and recontracting letter that was required to be submitted with Dr. Wang's recontracting application to the College and the University Senate Tenure and Recontracting Committee ("USTRC").

27. Chair members Hottle and Graziano recommended that all three members of the ADTRC vote against recontracting Dr. Wang.

28. Ms. Bowman, convinced that Dr. Wang's application possessed quality and demonstrated improvements in student evaluations and her prior Tenure and Recontracting applications, believed that Dr. Wang was capable of fulfilling the necessary field experience in future semesters and was a worthy candidate of final tenure at Rowan University.

29. Ms. Bowman, as the only member who wished to recommend Dr. Wang for recontracting, wrote and submitted a "Minority Report" to the USTRC, which outlined Dr. Wang's achievements.

30. In January of 2016, following the review of her application by the ADTRC, College, and University Senate Tenure and Recontracting Committee ("USTRC"), Dr. Wang's application was submitted for a formal vote by the Rowan University Board of Trustees, who voted to approve Dr. Wang's recontracting application. The results of this vote were published in the Board's January 2016 minutes.

31. On or about February 15, 2016 Provost James Newell ("Newell") called for a meeting for the next day with all full-time tenure track faculty in the Department of Art.

32. On or about February 16, 2016, Newell announced that four faculty members had placed a Vote of No Confidence in the Chair (Ms. Bowman). On or about February 16, 2016, the University Senate President confirmed Thomas, Appleson, Ohanian, and Adelson were the named faculty who placed the Vote of No Confidence.

33. Ms. Bowman had received no warning of this development prior to the department meeting with Newell. At the time of the Vote of No Confidence there was no documented Rowan University protocol or due process to establish the creditability of Ms. Bowman's alleged failure to conduct her role as Chair. There was no formal "Vote" by the Defendant for the Department of Art full time faculty that confirmed a numeric majority of "No Confidence" in Ms. Bowman's role as Chair. Ms. Bowman was publicly embarrassed and humiliated in front of the entire department, and suffered severe emotional distress over the way in which the situation was handled. That the Defendant's actions would cause such a reaction in Ms. Bowman is not only foreseeable, but also expected.

6

34. On or about February 24, 2016 Appleson, Adelson, Ohanian, and Thomas filed an "Internal Charge of Workplace Violence and Bullying" against Ms. Bowman.

35. Ms. Bowman was not provided with any specifics or evidence regarding the basis for the Workplace Violence and Bullying charge.

36. On or about March 23, 2016 Dr. Wang filed a complaint of discrimination against Ms. Bowman with Rowan University's Office of Equity and Diversity, alleging that Bowman and two other members of the ADTRC discriminated against her (Wang) in her job review on the basis of her race, national origin, and nationality.

37. Dr. Wang also alleged that Ms. Bowman engaged in student evaluation tampering.

38. Prior to 2016, Ms. Bowman had never had any claims or charges issued against her by Rowan's Office of Equity and Diversity and Office of Compliance & Corporate Integrity.

39. On or about May 5, 2016 Patrick Guilfoyle ("Guilfoyle"), Compliance Officer, conducted a four-hour interview of Ms. Bowman, investigating both the Racial Discrimination and Workplace Violence cases.

40. In the investigation, Guilfoyle conducted simultaneous interviews for both cases, and co-mingled evidence which was initially gathered in connection to only one of the cases. This raised the issue of a conflict of interest, where one investigator worked two separate cases for the same accused individual.

41. The lengthy interview was conducted in a hostile, accusatory fashion, and it was clear that the goal was to find Bowman guilty, rather than conduct an impartial investigation. Ms. Bowman once again was subject to harassment and intimidation, and suffered emotional distress resulting from the manner in which the investigation was conducted. Once again,

7

Ms. Bowman's suffering is not only foreseeable, but expected based upon the conduct of the Defendant.

42. At no point was Ms. Bowman presented with the opportunity to provide counter-evidence.

43. On or about July 21, 2016 in a letter from Carl Oxholm III, Executive Vice President and President's Designee, Ms. Bowman was notified of Rowan University's determination that she (Bowman) was found to have violated the New Jersey Anti-Discrimination Policy, despite the fact that Ms. Bowman was the only individual on the ADTRC to recommend approving Dr. Wang's recontracting application.

44. In the same July 21, 2016 letter, Ms. Bowman was issued the following sanctions: (1) immediate removal from her position as Chair of the Department of Art, and disqualification from future service as Chair; (2) ineligible for sabbatical leave for the next seven years; (3) prohibited from being appointed or serving on the ADTRC for at least five years; and (4) prohibited from being appointed the chair of any department, college, or university committee for five years. These adverse employment actions have materially altered the terms and conditions of her employment.

45. Rowan University found the two women (Bowman and Graziano) serving on the ADTRC guilty of engaging in racial discrimination against Dr. Wang during the ADTRC review process.

46. Curiously, Rowan University found Hottle, the Chair of the ADTRC and direct supervisor of the Tenure and Recontracting procedure for the 2015/2016 review cycle of Dr. Wang's packet not guilty of discrimination.

47. The fact that Hottle, Chair of the ADTRC and the only male of the group, was the only individual found not guilty raises serious questions over the integrity of the investigation

conducted by Rowan University General Counsel and Compliance Officer, Patrick Guilfoyle. Based on the circumstances surrounding the ADTRC meetings, the Defendant has clearly engaged in gender discrimination, given the Defendant's disparate treatment of the ADTRC members' investigations.

48. Not only did the university reach an erroneous outcome on the basis of Ms. Bowman's sex, but the university also engaged in selective enforcement when it only found the women on the ADTRC to be guilty of discrimination charges.

49. On or about July 28, 2016, during a phone conversation with Interim Dean Tweedie ("Tweedie"), Ms. Bowman was forced to resign as Chair of the Department of Art.

50. Ms. Bowman was replaced as Chair of the Department of Art by Interim Co-Chairs, Keith Adams (male) and Jill Gower (female). As of September 2017, Skeffington Thomas (male) is Chair of the Department of Art.

51. On August 1, 2016 in a letter from Dr. Johanna Valez-Yelin, Assistant Vice President Equity and Diversity, Rowan University determined that Ms. Bowman violated the Workplace Violence and Bullying Policy, and issued multiple sanctions upon her, including the following adverse employment actions: (1) removal from her position as Chair of the Department of Art; (2) prohibited from participating in committees at any level for five years; (3) rescinding of her already-approved sabbatical without an opportunity to reapply for five years; and (4) no release time for five years.

52. On August 25, 2016 in a letter from James Newell, Provost, Rowan University provided a cumulative corrected summary for both cases against Ms. Bowman and issued the following final multiple sanctions upon her, including the following adverse employment actions: (1) removal from her position as Chair of the Department of Art; (2) prohibited

from participating in committees at any level for five years; (3) ineligible to apply for Adjusted Work Load for five years; (4) prohibited from participating in the review of the credentials of Dr. Tingting Wang for any purpose; (5) rescinding of her already-approved sabbatical without an opportunity to re-apply for seven years.

53. Ms. Bowman had previously applied for a Rowan University Sabbatical in the fall of 2015. In the spring of 2016, Ms. Bowman's Sabbatical application was ranked as the top application (out of twenty-three) by the University Senate Sabbatical Committee. Ms. Bowman suffered an adverse employment action (as well as harm to her professional and academic reputation) when her sabbatical was rescinded.

54. Ms. Bowman had previously applied for Adjusted Work Load release time. In the fall of 2017, Ms. Bowman received this award for her ongoing professional work, which allowed her a two-course reduction per academic year. Ms. Bowman suffered an adverse employment action (as well as harm to her professional and academic reputation) when her Adjusted Work Load ("AWL") was rescinded.

55. Ms. Bowman was also recommended to receive an AWL for the Academic Term of 2018-2019, but on January 15, 2018 was informed by Dean Tweedie (via e-mail and hard copy) that she was ineligible to receive the AWL due to the sanctions she was issued in July of 2016. Dean Tweedie copied Suzanne FitzGerald ("FitzGerald") and Jon Olshefski ("Olshefski") on the e-mail, neither of whom were previously aware of the confidential sanctions placed upon Ms. Bowman. The e-mail did not inform either FitzGerald or Olshefski of the confidential nature of the sanctions. As a result, Ms. Bowman's privacy was violated, and embarrassing details of Ms. Bowman's sanctions may spread outside the Department of Art.

56. Confidentiality of Ms. Bowman's case has also been compromised by Jan Conradi ("Conradi"), a Professor in Graphic Design in the Department of Art. Conradi has informed students and faculty that Ms. Bowman "is not teaching in Graphic Design," despite the fact that Ms. Bowman's case remains opened and a final determination has not been made.

57. On or about November 17, 2016 Ms. Bowman was notified of an additional Equal Employment Opportunity Complaint, which was also filed by Dr. Wang.

58. On or about April 17, 2017 Ms. Bowman received a letter from Rowan University's Chief of Staff, Joanne Connor, in which Connor concluded that Ms. Bowman did not engage in coercion or attempt to influence evaluations completed by the students, and found "that the allegation of discrimination is unsubstantiated."

59. On or about May 31, 2017 Ms. Bowman met with Provost James Newell, Robert Zazzali, Vice President of Employee and Labor Relations and President's Chief of Staff, and AFT President Joe Basso, where Newell informed Ms. Bowman that she was being moved from the Department of Art into the Department of Public Relations & Advertising. Bowman's removal from the Department of Art is yet another adverse employment action which she has suffered at the hands of the Defendant.

60. Additionally, on or about May 31, 2017 Provost Newell moved Dr. Jane Graziano, ("Graziano") (female), Art Education Coordinator to the Department of STEAM, and Ms. Amanda Almon ("Almon") (female) Assistant Professor and Program Coordinator of Biomedical Art and Visualization ("BMAV") Program to the Department of Radio, Television and Film ("RTF"). Bowman's removal from the Department of Art caused her

to lose access to the BMAV program she implemented and is yet another adverse employment action which she has suffered at the hands of the Defendant.

61. In connection with Ms. Bowman's relocation to the Department of Public Relations & Advertising, Ms. Bowman is no longer permitted to teach her courses in the Graphic Design Concentration, a program in her hired expertise in which she designed and submitted in the fall of 2005 and implemented in the spring of 2007. This is yet another adverse employment action which she has suffered at the hands of the Defendant.

62. Instead, Ms. Bowman was asked to develop new courses and programming in the Department of Public Relations & Advertising, an area outside her hired teaching expertise and professional research and scholarship.

63. Curiously, Graziano and Almon were also moved into new departments (STEAM and RTF) and were permitted to request their same courses and scheduled classes with no assignment. Ms. Bowman was not given the same opportunity to request her courses and scheduled class times. Additionally, both Graziano and Almon were not asked to teach new courses outside of their hired expertise in their new departments.

64. In addition to the sanctions Ms. Bowman received in connection to the Discrimination and Workplace Violence and Bullying charge, Ms. Bowman has lost the ability to teach courses and work in the department in which she was hired with her professional expertise and lost access to students in the Concentration in Graphic Design and elective studio art majors.

65. In January of 2018, Ms. Bowman was assigned her class schedule for the Fall of 2018, the course subjects and class times of which did not reflect her request. Ms. Bowman has received her requested schedule in the Department of Art for the last fifteen years. Per her former Department of Art protocol considering the nature of specialized studio facilities

needed for studio arts, full-time faculty submit their own schedules rather than have schedules assigned to them, as Ms. Bowman did here. With her move to the Department of Public Relations and Advertising she has lost the right to request, teach, and schedule her courses. Rowan University continues to take adverse employment actions against Ms. Bowman.

## COUNT I
### (New Jersey Law Against Discrimination)
### (Sex Discrimination)

66. Plaintiff re-alleges and incorporates herein the paragraphs set forth in this Complaint.

67. The foregoing facts and circumstances demonstrate that Defendant has violated the NJLAD, N.J.S.A. 10:5-1 *et seq.*, by discriminating against Plaintiff on the basis of her sex (female).

68. As a direct and proximate result of the actions of the Defendant, Plaintiff suffered the following adverse employment actions: Ms. Bowman (1) was removed from her position as Chair of the Art Department; (2) had her previously-approved Sabbatical leave revoked, and was prohibited from taking sabbatical leave for the next seven years; (3) was prohibited from serving on the ADTRC or participating on any committee for at least five years; (4) was prohibited from taking Adjusted Work Load time for the next five years; and (5) was removed from her position as a Professor in the Department of Art and relocated to the Department of Public Relations & Advertising.

69. As a result of the Defendant's actions, Ms. Bowman has also suffered emotional distress, mental anguish, shame, embarrassment, humiliation, and harm to her academic and

professional reputation. Ms. Bowman has lost access to her teaching community, students, and academic connections.

70. Ms. Bowman has also needed to retain an attorney in order to assist her in asserting her legal claims and protecting her legal rights.

## COUNT II
### (New Jersey Law Against Discrimination)
### (Retaliation)

71. Plaintiff re-alleges and incorporates herein the paragraphs set forth in this Complaint.

72. The foregoing facts and circumstances demonstrate that Defendant has violated the NJLAD, N.J.S.A. 10:5-1 *et seq.*, by discriminating against Plaintiff for complaining of discriminating against Plaintiff due to Plaintiff's sex (female).

73. As a direct and proximate result of the actions of the Defendant, Plaintiff suffered the following adverse employment actions: Ms. Bowman (1) was removed from her position as Chair of the Art Department; (2) had her previously-approved Sabbatical leave revoked, and was prohibited from taking sabbatical leave for the next seven years; (3) was prohibited from serving on the ADTRC or participating on any committee for at least five years; (4) was prohibited from taking release time for the next five years; and (5) was removed from her position as a Professor in the Department of Arts and relocated to the Department of Public Relations & Advertising.

74. As a result of the Defendant's actions, Ms. Bowman has also suffered emotional distress, mental anguish, shame, embarrassment, humiliation, and harm to her academic and professional reputation. Ms. Bowman has lost access to her teaching community, students, and academic connections.

75. Ms. Bowman has also needed to retain an attorney in order to assist her in asserting her legal claims and protecting her legal rights.

## COUNT III
## (Title IX)
## (Sex Discrimination)

76. Plaintiff re-alleges and incorporates herein the paragraphs set forth in this Complaint.

77. Rowan University's Department of Art receives Federal funds for its program.

78. The foregoing facts and circumstances demonstrate that Defendant has violated Title IX of the Education Amendment of 1972, 20 U.S.C. 1681, *et seq.*, by discriminating against Plaintiff in her employment on the basis of her sex (female), under an educational program operated by a recipient of Federal financial assistance.

79. As a direct and proximate result of the actions of the Defendant, Plaintiff suffered the following adverse employment actions: Ms. Bowman (1) was removed from her position as Chair of the Art Department; (2) had her previously-approved Sabbatical leave revoked, and was prohibited from taking sabbatical leave for the next seven years; (3) was prohibited from serving on the ADTRC or participating on any committee for at least five years; (4) was prohibited from taking release time for the next five years; and (5) was removed from her position as a Professor in the Department of Arts and relocated to the Department of Public Relations & Advertising.

80. As a result of the Defendant's actions, Ms. Bowman has also suffered emotional distress, mental anguish, shame, embarrassment, humiliation, and harm to her academic and professional reputation. Ms. Bowman has lost access to her teaching community, students, and academic connections.

81. Ms. Bowman has also needed to retain an attorney in order to assist her in asserting her legal claims and protecting her legal rights.

## COUNT IV
### (Equal Protection)

82. Plaintiff re-alleges and incorporates herein the paragraphs set forth in this Complaint.

83. The foregoing facts and circumstances demonstrate that Defendant violated 42 U.S.C. 1983 when Defendant deprived Plaintiff of equal protection of the laws under the Fourteenth Amendment of the Constitution by discriminating against Plaintiff in her employment on the basis of her sex, acting under the color of state law.

84. As a direct and proximate result of the actions of the Defendant, Plaintiff suffered the following adverse employment actions: Ms. Bowman (1) was removed from her position as Chair of the Art Department; (2) had her previously-approved Sabbatical leave revoked, and was prohibited from taking sabbatical leave for the next seven years; (3) was prohibited from serving on the ADTRC or participating on any committee for at least five years; (4) was prohibited from taking release time for the next five years; and (5) was removed from her position as a Professor in the Department of Arts and relocated to the Department of Public Relations & Advertising.

85. As a result of the Defendant's actions, Ms. Bowman has also suffered emotional distress, mental anguish, shame, embarrassment, humiliation, and harm to her academic and professional reputation. Ms. Bowman has lost access to her teaching community, students, and academic connections.

86. Ms. Bowman has also needed to retain an attorney in order to assist her in asserting her legal claims and protecting her legal rights.

## COUNT V
### (Negligent Infliction of Emotional Distress)

87. Plaintiff re-alleges and incorporates herein the paragraphs set forth in this Complaint.

88. The foregoing facts and circumstances demonstrate that Defendant has committed the common law tort of negligent infliction of emotional distress.

89. As a result of the Defendant's actions, Ms. Bowman suffered emotional distress, mental anguish, shame, embarrassment, humiliation, and harm to her academic and professional reputation. Ms. Bowman has lost access to her teaching community, students, and academic connections.

90. Ms. Bowman has also needed to retain an attorney in order to assist her in asserting her legal claims and protecting her legal rights.

**WHEREFORE** Plaintiff demands judgment against Defendant for each and every count, as follows:

A. Compensatory damages of not less than $100,000;

B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);

C. Damages for humiliation, mental and emotional distress;

D. Statutory damages if applicable;

E. Punitive damages and or liquidated damages where permitted by law;

F. Attorneys' fees and costs of suit;

17

G. Lawful interest including pre-judgment interest on lost wages and any wages not paid in a timely manner; and,

H. Such other, further and different relief as the Court deems fitting, just and proper. Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the Defendant, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to the provisions of Rule 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## CERTIFICATION

Pursuant to the provisions of Rule 4:5-1, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated, and all known necessary parties have been joined in this action.

## DESIGNATION OF TRIAL COUNSEL

Mark E. Belland, Esquire is hereby designated as trial counsel for Plaintiff.

**DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS**

Pursuant to the provisions of Rule 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

**O'BRIEN, BELLAND & BUSHINSKY, LLC**

Attorneys for Plaintiff

By:_____
    Mark E. Belland, Esquire
    1526 Berlin Road
    Cherry Hill, NJ 08003
    856-795-2181/Fax 856-795-2182
    mbelland@obbblaw.com

Dated: 2/9/18