# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

SUSAN BOWMAN,

                Plaintiff,

        v.

ROWAN UNIVERSITY, JAMES
NEWELL, JOHN DOES 1-10, and
XYZ CORP. 1-10,

                Defendants.

CIVIL NO. 18-04239 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

MARK E. BELLAND
O'BRIEN, BELLAND & BUSHINSKY, LLC
1526 BERLIN ROAD
CHERRY HILL, NJ 08003

    *On behalf of Plaintiff Susan Bowman.*

CHRISTIE PAZDZIERSKI
DEPUTY ATTORNEY GENERAL OF NEW JERSEY
R.J. HUGHES JUSTICE COMPLEX
25 MARKET STREET, P.O. BOX 112
TRENTON, NJ 08625-0112

    *On behalf of Defendants Rowan University and James Newell.*

**HILLMAN, District Judge**

    This is an employment discrimination suit brought by Plaintiff Susan Bowman, a current professor and former department Chair at Rowan University. Defendants, Rowan University ("Rowan") and Provost James Newell ("Provost Newell"), move to dismiss the complaint and preclude

Plaintiff's request for leave to amend her complaint. For the reasons set forth herein, Defendants' motion will be granted, in part, and denied, in part. Plaintiff's request for leave to amend her complaint will also be granted, in part, and denied, in part.

## BACKGROUND

The Court takes its facts from Plaintiff's complaint. In 2002, Ms. Bowman began her academic career with Rowan as an Assistant Professor in the College of Fine and Performing Arts. (Compl. ¶ 12.) Ms. Bowman served as an Assistant Professor for five years before being elected Chair of the Department of Art in 2008. (Id. ¶ 13.) Ms. Bowman served in this position for eight years, being re-elected twice. (Id. ¶ 14.) Ms. Bowman also served on the Department of Art Tenure and Recontracting Committee (the "Committee") during the 2015-16 school year, along with Education of Art Coordinator, Dr. Jane Graziano, and the Committee Chair, Dr. Andrew Hottle. (Id. ¶ 20-21.)

The Committee reviewed two tenure-track faculty members for the 2015-16 school year. (Id. ¶ 23.) Dr. Tingting Wang was one of the two reviewed. (Id.) Dr. Hottle and Dr. Graziano found that Dr. Wang had not met the field work requirements necessary for recontracting and recommended that Ms. Bowman vote against recontracting.

(Id. ¶ 27.)  Dr. Hottle and Dr. Graziano voted against recontracting Dr. Wang, but Ms. Bowman submitted her own recommendation to a superior authority, the University Senate Tenure and Recontracting Committee, in favor of Dr. Wang's application.  (Id. ¶¶ 25-29.)  In January 2016, the Rowan University Board of Trustees voted to approve Dr. Wang's application.  (Id. ¶ 30.)

Following the vote, around February 15, 2016, Provost Newell called for a meeting with the full-time tenure track faculty in the Department of Art.  (Compl. ¶ 31.)  Provost Newell announced that four faculty members had placed a "vote of no confidence" in Ms. Bowman; the University Senate President confirmed those four were Dr. Fred Adelson, Dr. Herbert Appleson, Skeffington Thomas, and Nancy Ohanian.  (Id. ¶¶ 31-32.)  The same faculty that placed a vote of no confidence also filed an "internal Charge of Workplace Violence and Bullying" against Ms. Bowman about a week later.  (Id. ¶ 34.)  During her time as Chair, Ms. Bowman claims she was subjected to discriminatory incidents of harassment, intimidation, and hostility from the above Rowan faculty members as well as another faculty member, Dr. Daniel Chard.  (Id. ¶ 16.)

On or about March 23, 2016, Dr. Wang filed a complaint with Rowan against Ms. Bowman – and the other members of

the Committee - claiming the Committee discriminated against her during the recontracting review process and that Ms. Bowman engaged in student evaluation tampering. (Compl. ¶¶ 36-37.) A Compliance Officer investigated the allegations by conducting a four-hour long interview with Ms. Bowman. (Id. ¶¶ 39-41.) Ms. Bowman claims she was never given the opportunity to present her side of the story, and further claims the investigator had a conflict of interest because he investigated both the Committee action and evaluation tampering cases against her. (Id. ¶¶ 40, 42.)

On July 21, 2016, Ms. Bowman received a letter from Rowan's Executive Vice President that she had been found guilty of violating the New Jersey Anti-Discriminatory Policy. The Committee was charged with racially discriminating against Dr. Wang in the review process. (Compl. ¶ 36.) Both women were found guilty, while, Dr. Hottle, the male, was not. (Id. ¶¶ 45-47.) This resulted in Bowman's removal as Chair of the Department of Art, ineligibility for sabbatical for seven years, and a five-year ban from serving on the Committee or obtaining a chair position. (Id. ¶ 44.)

On August 1, 2016, Ms. Bowman received a letter from the Assistant Vice President of Rowan's Equity and

Diversity division determining that she had violated the Workplace Violence and Bullying Policy. (Compl. ¶ 52.) This also resulted in sanctions, including a second basis for her removal as Chair of the Department of Art, a five-year ban from any committee participation and release time, and a prohibition on her previously approved sabbatical for at least five years. (Id. ¶ 51.)

Based on these two sanction letters, Provost Newell issued a cumulative summary sanction letter that effectively removed Ms. Bowman from her position as Chair of the Department of Art, ruled her ineligible to receive an Adjusted Work Load for five years, prohibited her from participating in any committee for five years or reviewing Dr. Wang's credentials for any purpose, and rescinded her previously approved sabbatical. (Compl. ¶ 52.)

Following the sanctions, Ms. Bowman was moved from the Department of Art to the Department of Public Relations and Advertising by Provost Newell and other executive members. (Compl. ¶ 59.) Provost Newell proceeded to move Dr. Graziano to the Department of Science, Technology, Engineering, Art, and Mathematics and Ms. Amanda Almon to the Department of Radio, Television and Film. (Id. ¶ 60.) Ms. Bowman was left teaching new courses in an area where she lacked expertise. (Id. ¶¶ 61-62.) Dr. Graziano and

Ms. Almon were allegedly able to request and schedule their same courses, but Ms. Bowman was denied a similar request for the first time in fifteen years. (Id. ¶¶ 63-65.)

The complaint alleges the following five claims against Defendants, including: (1) a violation of the New Jersey Law Against Discrimination ("NJLAD") by discriminating against Ms. Bowman on the basis of her sex (Count I); (2) a violation of the NJLAD by retaliating against Ms. Bowman for complaining of being discriminated against on the basis of her sex (Count II); (3) a violation of Title IX of the Education Amendment of 1972 ("Title IX") by discriminating against Ms. Bowman on the basis of her sex while under employment of an educational program receiving federal financial assistance (Count III); (4) a violation of 42 U.S.C. § 1983 by depriving Ms. Bowman of her Fourteenth Amendment constitutional rights when Rowan discriminated against her on the basis of her sex (Count IV); and (5) the negligent infliction of emotional distress ("NIED") based on Rowan's adverse employment actions against her (Count V).

In Defendants' Motion to Dismiss, Defendants ask this Court to Dismiss Counts II, IV, and V. Plaintiff only contests dismissal of Counts II and IV. Plaintiff conceded dismissal of Count V, but has asked for leave to amend her

complaint to assert a claim for Intentional Infliction of Emotional Distress ("IIED"). Defendants request her Leave to Amend be denied. This Court will address each argument in turn.

## ANALYSIS

### A. Subject Matter Jurisdiction

Plaintiff has brought her claims pursuant to 42 U.S.C. § 1983, Title IX, and New Jersey state law. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all well-pleaded allegations in the complaint as true and construe all reasonable inferences in a light most favorable to the non-movant. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

The court is required to distinguish any claims acting as mere labels or reaching legal conclusions and decide which plausible claims give rise to relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (citations

omitted) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

A district court considers, "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our decision in <u>Twombly</u> expounded the pleading standard for 'all civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before <u>Twombly</u>.").

If the plaintiff does not plead enough facts to state a claim for relief, the claim is not plausible on its face and the motion to dismiss must be granted. <u>George</u>, 641 F.3d at 563 (citing <u>Twombly</u>, 550 U.S. at 570).

**C.  Motion to Dismiss**

### a. Whether Plaintiff's NJLAD Retaliation Claim Should be Dismissed

Defendants move to dismiss Plaintiff's NJLAD retaliation claim (Count II).  Defendants argue that a prima facie case for retaliation under NJLAD requires Plaintiff to plead facts showing she was engaged in a

protected activity.  Defendants argue there are no facts in
the Complaint showing Plaintiff engaged in a protected
activity.  Plaintiff asserts she engaged in a protected
activity when she "submitted a letter to the Civil Service
Commission seeking to appeal the discrimination complaint
determination issued by Rowan." (Pl.'s Opp. Br. 13-14.)
In the alternative, Plaintiff argues she should be given
leave to amend her complaint.

    In order to prove a prima facie case of retaliation
under the NJLAD, a plaintiff must show: (1) she was engaged
in a protected activity known to defendant; (2) she was
subjected to an adverse employment decision by the
defendant following the engagement of the activity; and (3)
a causal link exists between the protected interest and the
following adverse employment action.  N.J. STAT. ANN. § 10:5-
12.  A person engages in a protected activity when she
challenges any practice rendered unlawful under the NJLAD,
which includes, but is not limited to, discrimination
against race, gender, sex, creed, and national origin.  Id.

    Defendants are correct that Plaintiff has not included
any facts in her complaint to support her conclusory
allegation that she engaged in a protected activity.
Plaintiff first claimed the protected activity mentioned
supra in her opposition brief.  Accordingly, this Court

will dismiss Count II of the complaint, without prejudice, subject to the direction included immediately _infra_.

Because this Court will dismiss Count II, it must now consider whether it should grant Plaintiff leave to amend. Generally, "plaintiffs who file complaints subject to dismissal . . . should receive leave to amend unless amendment would be inequitable or futile." _Grayson v. Mayview State Hosp._, 293 F.3d 103, 114 (3d Cir. 2002). The Court does not find it inequitable or futile to allow Plaintiff leave to amend. The allegations included in the opposition brief – but left out of the complaint - include enough facts, if true, to support a facially plausible claim. Therefore, this Court grants Plaintiff leave to amend Count II.

b. Whether Plaintiff's § 1983 Claim Should be Dismissed

Defendants also move to dismiss Count IV of the complaint in which Plaintiff alleges Defendants violated 42 U.S.C. § 1983 by violating her due process and equal protection rights. Defendants contend that they are not "persons" under § 1983. Instead, Defendants argue, they are entitled to sovereign immunity under the Eleventh Amendment because they are an arm of the state.

In light of the recent changes to Rowan's legal relationship with the state of New Jersey, Plaintiff argues Defendants should not be considered a state entity under the law and believes dismissal is, at least, premature. Plaintiff contends this issue requires a more detailed analysis, which will likely require discovery and further briefing. The Court agrees.

To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). See also Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

It is well established that states are not "persons" subject to suit under § 1983 and sovereign immunity extends to state agencies and state officers, as long as the state is the real party in interest. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). States, state

agencies, and state officials may be sued, but not for monetary damages.  Id.

To determine whether the state is the real party in interest, this Court considers three factors: (1) who is responsible for paying an adverse judgment; (2) the status of the agency under state law; and (3) what degree of autonomy the agency retains from state control.  Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 658 (3d Cir. 1989).

"Each step of that analysis is a 'fact-intensive' undertaking that requires a fresh analysis and 'individualized determinations' for each entity claiming Eleventh Amendment immunity."  Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 546 (3d Cir. 2007). Furthermore, "'each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances.'"  Kovats v. Rutgers, The State Univ., 822 F.2d 1303, 1312 (3d Cir. 1987)(quoting Soni v. Bd. of Trs. of the Univ. of Tenn., 513 F.2d 347, 352 (6th Cir. 1975)).

Defendant heavily relies on Maliandi v. Montclair St. Univ., in which Montclair State University was provided immunity.  845 F.3d 77, 86 (3d Cir. 2016).  However, the Third Circuit in that case had access to enough information

to allow it to thoroughly address the Fitchik factors. Further, the Third Circuit in that case expressed the importance of conducting the Fitchik test in a unique, individualized, and fact-intensive manner. Id. at 85.

With regard to Rowan, this issue has not been thoroughly addressed since the Nannay decision in 2000. Nannay v. Rowan College, 101 F. Supp. 2d 272, 283 (D.N.J. 2000)(finding Rowan College, Rowan's predecessor institution, immune). The cases decided post-Nannay do not persuade this Court that dismissal is warranted at this stage. See e.g., Cottrell v. Norman, No. 12-1986, 2014 WL 3729215, at *7 (D.N.J. July 25, 2014) (stating briefly in dicta that Rowan University may not be considered a "person" under 42 U.S.C. § 1983); Williams v. Rowan Univ., No. 10-6543, 2014 WL 7011162, at *7 (D.N.J. Dec. 11, 2014) (citing to a footnote in Cottrell noting that Rowan may not be considered a "person" under 42 U.S.C. § 1983, but deciding the motion for summary judgment on the merits of the constitutional claim).

Moreover, Plaintiff has enumerated changes since the Nannay decision, including the New Jersey Medical and Health Science Education Restructuring Act which transferred the University of Medicine and Dentistry of New Jersey's School of Osteopathic Medicine to Rowan

University. (Pl.'s Opp. Br. 9-10.) These changes may accord Rowan a status similar to Rutgers University which has been held to not enjoy Eleventh Amendment immunity. Kovats, 822 F.2d at 1312, 1312 n.10. At this stage of the pleadings, the information supplied by Defendants is not enough for this Court to conclude that Rowan is clearly an arm of the state. To be clear, Defendant is free to raise this argument again at a later date, following discovery. Accordingly, the court denies Defendants' Motion to Dismiss as it relates to Count IV.

> ### c. Whether this Court Should Grant Plaintiff Leave to Amend Her Complaint to Assert a Claim for Intention Infliction of Emotional Distress

Defendants also move to dismiss Count V of the complaint in which Plaintiff alleges that Defendants' adverse employment actions against her constituted negligent infliction of emotional distress. Defendants contend Plaintiff failed to file a notice of claim within the statutorily prescribed period.

Plaintiff "consents to the withdrawal of her negligent infliction of emotional distress claim," but requests "leave to assert a claim for intentional infliction of emotional distress" and "leave to further amend the Complaint." (Pl.'s Opp. Br. 2-3.) Therefore, this Court will deny Defendants' Motion to Dismiss as moot and dismiss

Count V – as stated in the complaint – by consent of Plaintiff.[1]

But, this Court must still address Plaintiff's request for leave to amend to add an IIED claim against Defendants. Defendants argue leave to amend should not be granted because amendment here would be futile. Specifically, the Defendant asserts the New Jersey Tort Claims Act ("NJTCA") "does not waive sovereign immunity for a State entity when a public employee commits an intentional tort." (Defs.' Reply Br. 4 (citing N.J. STAT. ANN. §§ 59:2-2 and 59:2-10).)

Before addressing Defendants argument, this Court must assure itself that Defendants are covered by the NJTCA. A "[p]ublic entity" includes "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J. STAT. ANN. § 59:1-3. A "[p]ublic employee" is defined, in part, as "an employee of a public entity." Id. Under the Higher Education Governance statute, Rowan University is considered a public research university.

---

[1] In light of this disposition, the Court need not address Defendants' alternative argument that Plaintiff's negligence claim is barred by the New Jersey Workers' Compensation Act. N.J. STAT. ANN. § 34:15-8.

N.J. Sᴛᴀᴛ. Aɴɴ. § 18A:3B-3.[1]  Rowan is a public entity and

Provost Newell is a public employee.

Since Defendants fall within the confines of the

NJTCA, this Court may now consider whether the NJTCA opens

up a public entity or public employee to liability for an

intentional tort.  Defendants are correct that Rowan cannot

be held liable for an intentional tort committed by an

employee.  See Soto v. City of Newark, 72 F. Supp. 2d 489,

497 (D.N.J. 1999) ("[T]he Court cannot find Defendants –

public entities – liable for [IIED].") (citing N.J. Sᴛᴀᴛ.

Aɴɴ. § 59:2-10 ("A public entity is not liable for the acts

or omissions of a public employee constituting a crime,

actual fraud, actual malice, or willful misconduct.");

Fuchilla v. Layman, 537 A.2d 652 (N.J. 1988) (finding

public entities may only be liable for their negligent

actions); Kisselbach v. Cty. of Camden, 638 A.2d 1383 (N.J.

Super. Ct. App. Div. 1994) (noting a public entity may not

---

[1] Additionally, recent precedent has established Rowan as a
"public entity" within the meaning of the NJTCA.  The
Maliandi court considered NJTCA eligibility under the
funding factor of Fitchik, and even Rutgers University, a
university considered a "person" subject to suit under §
1983, was found to be covered by the NJTCA.  Eze v. Rowan
Univ., No. A-2659-07T2, 2009 WL 232181, at *1 (N.J. Super.
Ct. App. Div. Feb. 3, 2009); see also Maliandi, 845 F.3d at
87; Sykes v. Rutgers, The St. Univ. of N.J., 705 A.2d 1241,
1242 (App. Div. 1998) (stating that Rutgers is a public
entity covered by the NJTCA); N.J. Sᴛᴀᴛ. Aɴɴ. § 59:1-3.

be held liable for intentional infliction of emotional distress).  This Court finds amending the complaint to assert an IIED claim against Rowan would be futile.  Accordingly, it will deny Plaintiff's request for leave to amend on those grounds.

However, the same bar that renders a public entity immune does not apply to a public employee.  Under N.J. STAT. ANN. § 59:3-14, the NJTCA states that the willful misconduct of an employee is not subject to an immunity defense.  Therefore, the bar against an IIED claim against Rowan does not act as a similar bar against an IIED claim against Provost Newell.

Plausible claims must nonetheless be timely.  Even though a public employee may be liable for an intentional tort, the New Jersey Supreme Court has held "a plaintiff must give a public entity written notice, pursuant to the Act, prior to filing a common law intentional tort action against a public employee."  Velez v. City of Jersey City, 850 A.2d 1238, 1239 (N.J. 2004).

In this case, that means Plaintiff should have presented a notice of her claim no later than the ninety days after the accrual of the cause of action.  N.J. STAT. ANN. § 59:8-8.  If the claim was not noticed accordingly, the Plaintiff could be "forever barred from recovering

against a public entity or public employee," unless she fits within a narrow exception.  Id.  This Court, in its discretion, may allow Plaintiff to file notice within one year after the accrual of the cause of action.  N.J. Stat. Ann. § 59:8-9.  This may only be done if (1) Defendants have not been substantially prejudiced and (2) Plaintiff has submitted affidavits that prove extraordinary circumstances relating to her failure to file.[2]  N.J. Stat. Ann. § 59:8-8. If the one-year limit has passed, this Court is without discretion to allow late notice.  Davis v. Twp. of Paulsboro, 371 F. Supp. 2d 611, 618 (D.N.J. 2005).

Here, Plaintiff was required to file a notice of claim for any IIED claim against Provost Newell within ninety days of accrual of that cause of action.  According to the pleadings and briefings, it appears Plaintiff has failed to fulfill the notice requirements.  Plaintiff has not filed within the ninety-day period, nor has Plaintiff shown extraordinary circumstances for leave to file a late notice of claim.  Absent such a showing, this Court cannot allow Plaintiff to amend her complaint at this time.

---

[2] This Court has the discretion to permit late filings of tort claims within one year after accrual. See Webster v. Rutgers- N. J. Med. Sch., No. 15-08689, 2017 WL 3399996, at *3 (D.N.J. Aug. 4, 2017).

Plaintiff has an additional hurdle to overcome. In order to plead an IIED claim against Defendant Newell, a "verbal threshold" must be met under the TCA, which provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

R.K. v. Y.A.L.E. Sch. Inc., No. 07-5918, 2009 WL 1066125, at *3 (D.N.J. Apr. 20, 2009) (citing N.J. STAT. ANN. § 59:9-2(d)).

A permanent psychological injury may "constitute a 'permanent loss of a bodily function' within the meaning of N.J. STAT. ANN. § 59:9-2(d)." Collins v. Union Cty. Jail, 420 A.2d 625, 632 (N.J. 1997). However, humiliation, anguish, mental pain, depression, and emotional distress, are only considered "pain and suffering" and do not meet the verbal threshold. See Gretzula v. Camden Cty. Tech. Sch. Bd. Of Educ., 965 F. Supp. 2d 478, 490 (D.N.J. 2013) (stating a school board employee's IIED claim of mental anguish and emotional distress was barred); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 821 (D.N.J. 1993) (finding injuries consisting of humiliation,

mental pain and anguish "fall within the purview of pain and suffering"); <u>Mercado v. State</u>, 515 A.2d 804, 808 (N.J. Super. Ct. Law. Div. 1985) ("[E]motional stress, distress, anxiety, and embarrassment . . . provide no basis for recovery . . . under the Tort Claims Act."). Again, the pleadings and briefings do not currently show Plaintiff has met this verbal threshold. For this independent reason, this Court cannot currently allow Plaintiff to amend her complaint.

Accordingly, Plaintiff's Motion for Leave to Amend will be denied with prejudice as it relates to any IIED claims against Rowan, and without prejudice as it relates to an IIED claim against Provost Newell. With the above guidance in mind, Plaintiff may file a motion seeking leave to amend the complaint to add her IIED claim. Plaintiff is instructed to specifically address (1) whether extraordinary circumstances exist to allow filing of a late notice of claim and (2) whether her injuries exceed the verbal threshold.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count II of the Complaint will be granted, without prejudice, and Plaintiff's motion for Leave to Amend will be granted, as to Count II only. Defendants' Motion to

Dismiss will be denied as to Count IV.  As to Count V,

Defendants' Motion to Dismiss will be denied as moot as the

NIED claim will be dismissed, with prejudice, per

Plaintiff's concession.  Plaintiff's request for leave to

assert an IIED claim against Rowan will be denied with

prejudice.  Her motion to assert an IIED claim against

Provost Newell and serve late notice under the TCA will be

denied, without prejudice.

An appropriate Order will be entered.


Date: December 18, 2018              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN,U.S.D.J.